[Crim. No. 5201.   In Bank.   May 1, 1951.]

THE PEOPLE, Respondent, v. HENRY THOMAS, Appellant.

Mark M. Brawman and George A. Tebbe, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

CARTER, J.—Defendant, Henry Thomas, having pleaded guilty to murder (Pen. Code, § 187) the court found the murder to be of the first degree, and imposed the death penalty. The appeal is here by operation of law. Charged with defendant, was William McCain, who pleaded not guilty. McCain was tried, found guilty, and a sentence of life imprisonment was imposed. Also charged with the same crime, and ordered held to answer at the preliminary examination was Joe Cooper, but what disposition has been made of the charge against him, if any, does not appear.

According to the evidence taken when the degree and punishment were fixed, and at the preliminary hearing, Mr. and Mrs. Ainsworth were managing a grocery store near Hatfield, Siskiyou County, California, on October 20, 1950. About 5:30 in the afternoon, while the Ainsworths were present in the store, defendant and McCain entered it, McCain in the lead. Defendant ordered soft drinks. McCain drew a pistol and stated it was a holdup. Defendant also drew a pistol. Ainsworth grasped the barrel of the pistol held by McCain and in the ensuing struggle it was discharged, a bullet striking and wounding Mr. Merrill, who entered the store at that time. After McCain's gun discharged, defendant fired several shots from his pistol, two of which struck Mrs. Ainsworth, causing her death. McCain and defendant fled and were finally apprehended in Bakersfield.

Defendant urges two grounds for reversal: (1) The court erred in failing to take evidence to ascertain the penalty to be imposed. (2) The penalty should be reduced to life imprisonment under section 1260 of the Penal Code, as amended in 1949. (Stats. 1949, ch. 1309, § 1.)

Defendant was held to answer following a preliminary examination and an information was filed against him. On December 4, 1950, he was arraigned and not having means to employ counsel, one was appointed for him—Mr. Mark M. Brawman. Time to plead was set for December 6, 1950, at his counsel's request. At that time, after a brief appearance in court, counsel for defendant and McCain's counsel, and

the district attorney retired to the judge's chambers where the judge said that Mr. Brawman had spoken to him in regard to the possibility of defendant's avoiding the death penalty by making a "certain" plea. The judge remarked that he had read the transcript of the preliminary hearing and that he was "inclined" to give the "extreme" penalty whether he pleaded guilty or not guilty. On returning to court, defendant pleaded guilty and December 11, 1950, was fixed as the time for "pronouncing judgment," later continued to December 14, 1950, when the court announced it would hear evidence on the degree of the offense. The district attorney called decedent's husband, Ainsworth, to the stand and he testified to the facts relating to the killing. Defendant's counsel was asked by the court if he wished to cross-examine and declined. The court then remarked: "Step down (addressing the witness). I don't think we will need any further." The district attorney then made the same remark, to which the court replied "All right." Defendant's counsel remained silent. The court then stated that it was murder of the first degree. Thereafter when asked by the court whether he had any legal cause to show why sentence should not be pronounced, defendant stood mute. The death penalty was imposed.

There is no question that the evidence is ample to establish murder of the first degree, for it was committed while attempting to commit robbery. (Pen. Code, § 189.) ■ Defendant's excuse for not offering any evidence on the question of penalty is that the court's remark heretofore quoted foreclosed such offer. That remark may not necessarily be so construed, and the court, as seen, did not only take the evidence on the subject consisting of Ainsworth's testimony, but also the evidence given at the preliminary hearing which went into the details of the crime from the planning of it to the flight. Moreover, defendant stood mute when asked if he had any legal cause to show why sentence should not be pronounced and it was not until then that the death sentence was "pronounced." ■ The rule is stated: "In determining the degree of an offense and the punishment to be imposed, after a plea of guilty, it is the duty of the trial court to consider matters in aggravation as well as in mitigation of the offense. The legal significance of established facts may well constitute an element of which cognizance is taken in the exercise of judicial discretion. A hearing for the determination of the degree of an offense and the punishment therefor is not a trial in the full technical sense, and is not governed

by the same strict rules of procedure as a trial. As stated in *People* v. *Williams,* 14 Cal.2d 532, 536 [95 P.2d 456] (quoting from *People* v. *Popescue,* 345 Ill. 142, 153, 158 [177 N.E. 739, 77 A.L.R. 1199]) it is 'simply a statutory hearing, by which the court examined witnesses to determine whether any facts existed to aggravate or mitigate the punishment,' and 'in considering evidence in aggravation or mitigation of the offense the court may consider many matters *"not admissible on the issue of guilt or innocence"* . . .' " (*People* v. *Gilbert,* 22 Cal.2d 522, 528 [140 P.2d 9].) And as said by this court in *People* v. *Forbes,* 219 Cal. 363, 372 [26 P.2d 466]: ''He [defendant] cannot now complain that he sat mute with his attorneys at his side while evidence of his wicked crime was given by the several witnesses. That he offered no evidence, if any there was, which was not included in the ample statements and confessions made by himself and Mrs. Nelson, was a matter wholly within the control of his attorneys, who might have examined each witness at length and, no doubt, could have obtained a continuance upon the asking, for the production of evidence tending to mitigate the offense, if such existed.'' And also what was said in *People* v. *Jackson,* 36 Cal.2d 281, 288 [223 P.2d 236], is applicable: ''Finally, there is defendant's argument that the trial court abused its discretion in imposing the death penalty upon him. The contention seems pointless. Admittedly the homicide here involved was committed in the perpetration of a robbery, and as such constituted murder of the first degree. (Pen. Code, § 189, *People* v. *Bautista,* 22 Cal.2d 867, 869 [141 P.2d 417]; also, *People* v. *Lindley,* 26 Cal.2d 780, 791 [161 P.2d 227]; *People* v. *Isby,* 30 Cal.2d 879, 888 [186 P.2d 405].) While defendant urges that the killing was 'accidental . . . precipitated by the unfortunate attempt of the deceased to wrestle the gun from defendant,' and that the 'Probation Officer reported . . . a recommendation of life imprisonment,' these same matters were fully argued at the hearing to determine the degree of murder and the sentence to be imposed therefor. Their evaluation in the light of the entire record was for the trial court's consideration, and it unquestionably appears that the trial court, acting within its discretion and upon a consideration of all the circumstances, fixed the sentence in accordance with the statutory authority vested in it.."

█ Authority was not granted to the court by the amendment to section 1260 of the Penal Code to reduce the penalty

from death to life imprisonment in this case for the "amendment [to § 1260] did no more than bring section 1260 into accord with section 1181(6) with respect to reduction of the degree of an offense and make clear that the court may reduce the punishment in lieu of ordering a new trial, when there is error relating to the punishment imposed. The test for determining what action should be taken remains the same: was there prejudicial error in the proceedings? When, as in this case, the trial court is vested with discretion to determine the punishment (Pen. Code, § 190), and there has been no error, this court has no power to substitute its judgment for that of the trial court." (*People* v. *Odle, ante,* p. 52 [230 P.2d 345].) There was no error in the proceedings in this case.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

SHENK, J.—I concur in the judgment but I do not agree with the very definite suggestion in the majority opinion that this court has the power under section 1181(6) or section 1260 of the Penal Code, even in the presence of error, to reduce the punishment and thus commute the sentence from death to life imprisonment or any lesser period. That power is exclusively vested in the governor of the state by section 1 of article VII of our Constitution. My views are more fully expressed in my concurring opinion in *People* v. *Odle, ante,* p. 52.