[Crim. No. 5424. In Bank. July 3, 1953.]

## THE PEOPLE, Respondent, v. JOHNNIE HARRISON, Appellant.

Maurice C. Sherrill, Public Defender, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, William E. James, and Alan R. Woodard, Deputy Attorneys General, for Respondent.

SCHAUER, J.—This is an appeal from a judgment of conviction of first degree murder. Trial by jury was waived, defendant introduced no evidence, and there was no motion for new trial. The prosecution evidence shows without dispute that defendant murdered Mrs. Theda Campbell in an attempt to perpetrate robbery. Defendant's contentions are (1) that the trial court erroneously admitted in evidence a confession which was not shown to have been voluntary; (2) that the death penalty is excessively harsh and the judgment should be modified by this court in the exercise of the power to "reduce . . . the punishment imposed" (Pen. Code. § 1260). We have concluded that neither contention has merit.

On August 10, 1952, one Karl Berg hired defendant to work in Berg's salvage yard in Indio. Defendant worked there until the afternoon of August 31. On that afternoon he "did a few chores" for Mrs. Campbell. At about 7 p.m. defendant returned to the salvage yard and asked to borrow some money. Berg observed that defendant had been drinking. He refused to loan defendant money, but paid him one dollar which he owed him. Thereafter defendant went to Mrs. Campbell's house and asked her for money. She refused the request. Defendant produced a knife and inflicted two fatal lacerations on the neck, two deep lacerations on the chest, and numerous superficial lacerations; also, Mrs. Campbell's ribs were broken. Defendant ransacked Mrs. Campbell's house but found nothing of value. (One of the officers who thereafter searched the house testified that he found her purse, containing money, but that the house was such a "welter of confusion" that he did not discover the purse on his first examination of the premises.)

Defendant fled to Arizona, where he was found by the California police on September 12, 1952. He struggled with the officers who attempted to arrest him and escaped from

custody. They found him the next morning lying in a field; he had slashed his throat and both his wrists. The officers took him to the hospital. In the ambulance defendant, who could barely speak, admitted that he had done some work for Mrs. Campbell and stated that he cut his throat because "he wanted to die for he knew what he was going back for."

The next morning, September 14, the officers questioned defendant in the Arizona hospital. The evidence is undisputed that he made a statement without duress or offer of immunity or reward; that his mental condition appeared to the officers to be good and that he answered questions intelligently; and that he was questioned only with permission of the hospital attendants. The resulting confession was admitted in evidence over objection of defense counsel that it had not been shown that at the time defendant was not under the influence of drugs and was in a mental and physical condition to make a rational and coherent statement.

Thereafter defendant made other confessions which were to the same effect as the confession of September 14 and the above summarized evidence. Also, defendant was connected with the crime by various items of real evidence (bloody footprints, hidden bloody clothing to which he directed the officers). His confessions include express admissions that he went to Mrs. Campbell's house for the purpose of obtaining money.

█ The prosecution was not required to prove the negative fact that defendant was not under the influence of drugs when he made the confession of September 14. There was a prima facie showing that the confession was voluntary, and this showing was not disputed. █ "Any evidence tending to show that appellant may have been in pain when he gave the statements at the hospital did not affect their admissibility but only the jury's [here, the trial court's] consideration of the weight and effect to be given them." (*People v. Amaya* (1952), 40 Cal.2d 70, 76 [251 P.2d 324].)

█ The argument of defendant's counsel as to reduction of punishment is based on matters which were called to the attention of the trial court before he passed sentence; i. e., that defendant is an illiterate Negro who had spent most of his life in the South, much of it in prison; that the evidence tends to show that he was intoxicated at the time of the offense; and that defendant, once he was apprehended after his unsuccessful suicide attempt, freely cooperated with the officers by describing the offense and going over the scene

of the crime and his escape with them. These circumstances are not ground for reducing the degree of the crime or altering the character of the punishment. The majority of this court have taken the view that "When, as in this case, the trial court is vested with discretion to determine the punishment (Pen. Code, § 190), and there has been no error, this court has no power to substitute its judgment for that of the trial court." (*People* v. *Odle* (1951), 37 Cal.2d 52, 58 [230 P.2d 345]; see, also, *People* v. *Thomas* (1951), 37 Cal.2d 74, 78 [230 P.2d 351]; *People* v. *Dessauer* (1952), 38 Cal.2d 547, 555 [241 P.2d 238].)

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.