[Crim. No. 5714.   In Bank.   Sept. 23, 1955.]

THE PEOPLE, Respondent, v. JAMES COBB et al., Appellants.

Lowell Lyons, Cletus J. Hanifin, Eller & Winton, Jay J. Eller and Howard L. Winton for Appellants.

Edmund G. Brown, Attorney General, William E. James and Elizabeth Miller, Deputy Attorneys General, for Respondent.

SPENCE, J.—Defendants Cobb and Ault appeal from judgments of conviction for attempted robbery. Defendant Cobb also appeals from an order denying his motion for a new trial.

The information charged both defendants with attempted robbery of one Henry Shelton, an employee of a liquor store. Each defendant admitted certain alleged prior convictions. The jury returned verdicts of guilty on the attempted robbery charges. Although there was a single trial, defendants have taken separate appeals; and as different points have been raised, each appeal will be considered separately, but without repeating the discussion of those points which are common to both appeals.

The evidence adduced by the People, through the testimony of Henry Shelton, the employee in the liquor store, and of the police officers Hernandez and Leonard, who were present at the time of the attempted robbery, showed that defendants Cobb and Ault entered the store; that Cobb asked Mr. Shelton for some cigarettes and gave him a bill, and then said "This is a stick-up!" The police officers also testified that they shouted "Police! Drop your guns!" An exchange of bullets ensued, with the result that both defendants were wounded.

Officer Sluder testified that defendant Ault had subsequently told him that he (Ault) and Cobb had been drinking; that the subject of pulling a stick-up was discussed as a means of obtaining money; that Ault said he knew someone who had a gun; that Ault and Cobb drove to the home of a Mr. Sherer and that Cobb entered and returned with a gun; that they drove around looking for a store to stick up; that Ault had previously told Cobb about a liquor store; that they parked the car around the corner from this liquor store

and entered; that once they were inside, Cobb asked for a package of cigarettes; that Cobb then pulled out the gun and told the clerk that it was a "stick-up."

### APPEAL OF DEFENDANT AULT

Defendant Ault contends that the court committed prejudicial error in not investigating a private communication between a juror and a relative of one of the defendants. This communication occurred during a recess taken at the end of the first day's proceedings, and this fact was brought to the court's attention. At the beginning of the next day's proceedings the court discussed the seriousness of such behavior and warned that any repetition of such conduct would be dealt with severely. It does not appear that the communication related to the trial, and it was therefore not an abuse of discretion to fail to investigate the communication or to declare a mistrial. (*People* v. *Phelan,* 123 Cal. 551, 567-568 [56 P. 424]; *People* v. *Dunne,* 80 Cal. 34, 36 [21 P. 1130]; *People* v. *Quiel,* 68 Cal.App.2d 674, 679-680 [157 P.2d 446]; *People* v. *Henry,* 132 Cal.App. 557, 562-563 [23 P.2d 77]; *People* v. *Murphy,* 92 Cal.App. 729, 730-731 [268 P. 927].)

The mere showing of such a communication does not raise a presumption that the juror was improperly influenced. (*People* v. *Dunne, supra,* 80 Cal. 34, 36; *People* v. *Henry, supra,* 132 Cal.App. 557, 562-563.)

Defendant Ault further contends that there was not sufficient proof of the corpus delicti, and that his conviction was improperly based on his extrajudicial confession. A conviction cannot be had upon a defendant's extrajudicial confession without independent proof of the corpus delicti, but in the instant case, sufficient independent evidence was introduced for that purpose. All that need be shown by independent evidence before a confession may be introduced is that a crime has been committed by someone. (*People* v. *McMonigle,* 29 Cal.2d 730, 738 [177 P.2d 745]; *People* v. *Selby,* 198 Cal. 426, 438 [245 P. 426]; *People* v. *Beltowski,* 71 Cal.App.2d 18, 20 [162 P.2d 59]; *People* v. *Locurto,* 97 Cal.App. 185, 191 [275 P. 462].) Proof of the corpus delicti does not require proof of the identity of the perpetrators of the crime, nor proof that the crime was committed by the defendant. (*People* v. *Amaya,* 40 Cal.2d 70, 76 [251 P.2d 324]; *People* v. *Leary,* 28 Cal.2d 740, 745 [172 P.2d 41]; *People* v. *Selby, supra,* 198 Cal. 426, 434; *People* v. *Bol-*

*linger*, 196 Cal. 191, 200 [237 P. 25]; *People* v. *Ward*, 134 Cal. 301, 306 [66 P. 372].) ■ Thus, in the present case, the corpus delicti of attempted robbery was proved when eye-witnesses testified that two men entered the store and one of them brandished a gun and said, "This is a stick-up!" The corpus delicti having been established, there was no error in admitting defendant Ault's extrajudicial confession.

■ The contention that Ault's confession was rendered involuntary and inadmissible because of his poor physical condition cannot be sustained. The evidence discloses that there was no force or violence used on defendant Ault, and that there were no promises of reward or immunity from punishment, and that he spoke voluntarily. At the beginning of the interrogation Ault was asked how he felt and he answered that he felt better. Thus, even though Ault may have been under the influence of a drug, may have received blood transfusions and may have been in poor physical condition the confession was admissible, and these factors merely went to the weight to be attached to it. (*People* v. *Harrison*, 41 Cal.2d 216, 218 [258 P.2d 1016]; *People* v. *Amaya, supra,* 40 Cal.2d 70, 76; *People* v. *Lehew,* 209 Cal. 336, 340-341 [287 P. 337]; *People* v. *Miller,* 135 Cal. 69, 71-72 [67 P. 12]; *People* v. *Duncan,* 72 Cal.App.2d 247, 251-253 [164 P.2d 313].) Having concluded that defendant Ault's confession was properly admitted, it appears that there was abundant evidence to support his conviction.

### APPEAL OF DEFENDANT COBB

Defendant Cobb contends that the court erred in "making an issue" of his prior convictions in view of the fact that he had previously admitted these prior convictions. This contention has no merit. ■ Although Penal Code, section 1025, provides that "the charge of the previous conviction must not be read to the jury, nor alluded to on the trial," the testimony of a defendant who has testified in his own behalf may be impeached, like that of any other witness, by proof that he has suffered prior convictions of felonies. (*People* v. *David,* 12 Cal.2d 639, 646 [86 P.2d 811]; *People* v. *Romer,* 218 Cal. 449, 452 [23 P.2d 749].) This is precisely what occurred in the present case. Defendant Cobb was asked on cross-examination if he had ever been convicted of a felony, and he answered in the affirmative, indicating that it was for the felonies of receiving stolen property and for escaping from a road camp. He was then asked if he had served a term of imprisonment for the escape felony. An

objection was sustained on the ground that this was immaterial. It is clear that the questions were asked for impeachment purposes only, and, as such, they were entirely proper. An objection was sustained to the question relative to the term of imprisonment; and therefore, no error is apparent, much less any prejudice.

Defendant Cobb further contends that prejudicial error was committed by not allowing Mr. Becker, a character witness, to testify to defendant Cobb's reputation for truth, honesty, integrity, peace and quiet. This testimony was excluded on the ground that no sufficient foundation had been laid. In attempting to lay a foundation, the witness testified on direct examination that defendant Cobb had worked for him on and off for approximately four years and that he knew his reputation for honesty, integrity and truthfulness, based on his association with defendant at his place of business and his discussions with other employees who worked with defendant; that he based his opinion on these conversations and his knowledge of Cobb's general reputation in the community. On *voir dire* examination, the witness testified that he did not know anyone who lived in Cobb's neighborhood, and that his only contact with Cobb was as an employee and through discussions with other employees; that he had only talked about Cobb's reputation with the men in the shop, and that outside of that he had nothing in common with Cobb; that he mostly talked with people at his place of business; that he had talked to eight or ten people in a restaurant across the street from his place of business, all of whom resided in the community, and about four or five of whom did not work for him; that he based his opinion of the general reputation of Cobb on the discussions with those people, and that he knew Cobb's general reputation in the community.

The trial court concluded that a sufficient foundation had not been laid because the witness' knowledge of defendant Cobb's reputation was limited to contacts with a restricted group of persons, who were mostly Cobb's fellow employees, rather than being based on general reputation.

It is undoubtedly true that ''In this age of rapid transit and quick communication . . . business men may acquire no reputation one way or the other in the community in which they actually reside, and bear an excellent reputation miles distant where they follow their daily vocations. . . .'' (*People* v. *Derrick*, 85 Cal.App. 406, 409 [259 P. 481]; see also *People* v. *Schmidt*, 79 Cal.App. 413, 418-419 [249 P.

832, 250 P. 1104].) Therefore, it would be illogical to say that reputation evidence should be limited to the community of one's residence to the exclusion of the community of one's place of business; and if it is shown that a general reputation exists in the community of one's place of business, and that the witness has sufficient knowledge of it, the witness should be permitted to testify concerning such general reputation. ▇▇ But irrespective of whether the evidence is directed to the reputation in the community where the person resides or the community where he works, it must relate to general reputation.

▇▇ Respondent raises the question of whether the testimony showed that Mr. Becker had sufficient knowledge of any *general* reputation of defendant Cobb in the community to qualify him as a character witness. We may assume, for the purpose of this discussion, that the testimony so showed and that the trial court should have permitted him to testify as to whether such general reputation was good or bad. Our review of the record nevertheless convinces us that any alleged error in sustaining the objection to Mr. Becker's further testimony was not prejudicial. The evidence clearly demonstrated that defendants were guilty of the crime charged. Furthermore, Mr. Becker had already testified that he had talked to about eight or ten people concerning defendant Cobb's general reputation for the traits involved and the witness stated: "They claimed that he was all right, in fact." No motion to strike was made, and this testimony remained in the record for the jury's consideration. It is impossible to conclude that any further testimony of Mr. Becker, stating his conclusion based upon said conversations, as to the nature of defendant Cobb's general reputation, would have been any more beneficial to said defendant.

The judgments and the order denying the motion for a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.